[No. 50895–0.  En Banc.  January 16, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. KEVIN HORNADAY, *Petitioner.*

*Scot D. Stuart,* for petitioner (appointed counsel for appeal).

*Douglas S. Boole, Prosecuting Attorney,* and *Melanie Paige Romo, Deputy,* for respondent.

CALLOW, J.—A juvenile, Kevin Hornaday, appeals his conviction for resisting arrest. He contends that his arrest for illegal consumption or possession of alcohol was unlawful because he was taken into custody without a warrant and the alleged commission of the misdemeanor did not occur "in the presence" of the arresting officer. He argues that he cannot be guilty of resisting arrest because the

arrest itself was unlawful.

On June 6, 1982, an Okanogan County police officer observed the defendant who appeared to be intoxicated. When the officer approached the defendant, he could smell a strong odor of alcohol on the defendant's breath. The officer asked the defendant for some identification. The defendant showed him his Washington State driver's license which indicated that he was only 20 years old. The officer arrested the defendant for illegal consumption or possession of alcohol. When the defendant refused to enter the backseat of the police car, he had to be forcibly placed there. The defendant was subsequently charged with illegal consumption or possession of alcohol, RCW 66.44.270, and with resisting arrest, RCW 9A.76.040. RCW 66.44.270 reads in part:

> Except in the case of liquor given or permitted to be given to a person under the age of twenty–one years by his parent or guardian for beverage or medicinal purposes, or administered to him by his physician or dentist for medicinal purposes, no person shall give, or otherwise supply liquor to any person under the age of twenty–one years, or permit any person under that age to consume liquor on his premises or on any premises under his control. It is unlawful for any person under the age of twenty–one years to acquire or have in his possession or consume any liquor except as in this section provided and except when such liquor is being used in connection with religious services.

RCW 9A.76.040 reads:

> (1) A person is guilty of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from lawfully arresting him.
> (2) Resisting arrest is a misdemeanor.

Prior to trial, the defendant moved to dismiss the charges. The District Court denied the motion, concluding that the defendant "was intoxicated and therefore was in possession of liquor because it was in his body." The defendant later stipulated to the facts surrounding the incident. The District Court found him guilty as charged.

The defendant appealed. The Superior Court and Court of Appeals affirmed. This appeal follows.

The first issue is whether the misdemeanor occurred "in the presence of" the officer thereby validating his warrantless arrest.

RCW 10.31.100 reads in pertinent part:

> A police officer having probable cause to believe that a person has committed or is committing a felony shall have the authority to arrest the person without a warrant. A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer, except as provided in subsections (1) through (3) of this section.
>
> (1) Any police officer having probable cause to believe that a person has committed or is committing a misdemeanor or gross misdemeanor, involving physical harm or threats of harm to any person or property or the unlawful taking of property or involving the use or possession of cannabis shall have the authority to arrest the person.
>
> (2) Any police officer having probable cause to believe that a person has committed or is committing a violation of any of the following traffic laws shall have the authority to arrest the person:
>
> . . .
>
> (d) RCW 46.61.502 or 46.61.504, relating to persons under the influence of intoxicating liquor or drugs;

(This statute was amended by Laws of 1984, ch. 263, § 19; Laws of 1985, ch. 267, § 3; Laws of 1985, ch. 303, § 9. The amendments do not alter the statute as it applies to the facts in this case.)

The first paragraph of the statute resembles the common law rule that a police officer, *even with probable cause,* may not arrest a person for a misdemeanor committed *outside the presence of* the officer, *unless* the officer has a warrant. *State v. Bonds,* 98 Wn.2d 1, 9–10, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831 (1983). *Accord, Stanley v. State,* 230 Md. 188, 192, 186 A.2d 478 (1962). Thus, "an arrest for a misdemeanor committed outside the presence of the officer ordinarily cannot lawfully be made even if the probable

cause needed for a warrant is in the officer's hands and it appears that the failure to make an immediate arrest will result in further damage or in the successful flight of the suspect." (Footnote omitted.) W. LaFave, *Arrest: The Decision to Take a Suspect into Custody* 18 (1965).

Subsections (1) through (3) set forth exceptions to the general requirement that a misdemeanor be committed in the presence of the officer. For instance, any police officer having probable cause to believe that a person has committed or is committing a misdemeanor or gross misdemeanor involving physical harm or threats of harm to any person or property may arrest the person without a warrant. RCW 10.31.100(1). The crime of use or possession of cannabis and various traffic–related crimes are likewise exempted from the general warrant requirement. *See* RCW 10.31.100. The Legislature has noted the need to cover these specific instances.

The State, however, does not contend that the defendant's arrest falls within the purview of the enumerated exceptions. The State concedes the defendant did not "acquire" alcohol in the presence of the officer. The defendant's arrest was lawful therefore only if the arresting officer had probable cause to believe the crime was being committed in his presence. We defined probable cause for the purpose of this test in *Tacoma v. Harris,* 73 Wn.2d 123, 126, 436 P.2d 770 (1968), quoting from *Garske v. United States,* 1 F.2d 620, 622 (8th Cir. 1924):

> [F]or a crime, which they have probable cause to believe is being committed in their presence, *though it be a misdemeanor,* duly authorized peace officers may make arrest without a warrant. The probable cause which will justify arrest for a misdemeanor without a warrant must be a judgment based on personal knowledge acquired at the time through the senses, or inferences properly to be drawn from the testimony of the senses.

Whether the crime occurred "in the presence of" the officer turns on the meaning of the words "possession" and "consume" as used in RCW 66.44.270.

■ The statute does not define the term "possession". However, the language "possession of intoxicating liquor" is "clear, plain and unambiguous," *State v. Johnson,* 129 Wash. 62, 66, 224 P. 602 (1924). A defendant "possesses" a controlled substance when the defendant knows of the substance's presence, the substance is immediately accessible, and the defendant exercises "dominion or control" over the substance. *In re R.B.,* 108 Wis. 2d 494, 496, 322 N.W.2d 502 (Ct. App. 1982). The term "possession" includes constructive as well as actual possession. Constructive possession of liquor denotes control of the substance. *Cf. State v. Bostock,* 147 Wash. 402, 404, 266 P. 173 (1928); *State v. Davis,* 16 Wn. App. 657, 659, 558 P.2d 263 (1977) (constructive possession of marijuana requires a showing of dominion and control over the premises).

The defendant, citing *Nethercutt v. Commonwealth,* 241 Ky. 47, 43 S.W.2d 330 (1931), argues that, as a matter of law, liquor in one's stomach does not constitute "possession" of intoxicating liquor. The Court of Appeals found *Nethercutt* unpersuasive on the ground that the case was decided within the context of the prohibition laws whose purpose was to prohibit only the unlawful transportation or sale of such spirits, not their occasional use at social gatherings. The court concluded that the intent of the prohibition laws differed from the intent of RCW 66.44.270 which is to prohibit *all* forms of possession of liquor by an underage person unless otherwise provided. *See State v. Hornaday,* 38 Wn. App. 431, 434, 685 P.2d 653 (1984).

A similarity exists in the definitions of the terms "acquire," "possess," and "use" in the statutes relating to drugs and to liquor. *State v. Reid,* 66 Wn.2d 243, 247, 401 P.2d 988 (1965), which involved narcotics rather than liquor, distinguished between "user" and "possessor" even though the court acknowledged "that often the user of narcotics is also a possessor." Once a narcotic is injected into the vein, or swallowed orally, it is no longer in the individual's control for purposes of possession. *State v. Flinchpaugh,* 232 Kan. 831, 834, 659 P.2d 208 (1983); *State v.*

*Downes,* 31 Or. App. 1183, 572 P.2d 1328 (1977); *Franklin v. State,* 8 Md. App. 134, 258 A.2d 767 (1969).

The same is true of alcohol. Once it is within a person's system, the power of a person to control, possess, use or dispose of it is at an end. The drug is assimilated by the body. The essential element of control is absent. As observed in *State v. Flinchpaugh, supra* at 834:

> Once a controlled substance is within a person's system, the power of the person to control, possess, use, dispose of, or cause harm is at an end. The drug is assimilated by the body. The ability to control the drug is beyond human capabilities. The essential element of control is absent. Evidence of a controlled substance after it is assimilated in a person's blood does not establish possession or control of that substance.

Assuming then that the defendant had been drinking, the alcohol was no longer in his control and/or possession at the time of his arrest in the sense contemplated by RCW 66.44.270.

We are concerned with the lawfulness of the arrest as were the lower courts. *See Hornaday,* at 434. They rely upon *State v. Green,* 70 Wn.2d 955, 958, 425 P.2d 913, *cert. denied,* 389 U.S. 1023 (1967) and *State v. Ward,* 24 Wn. App. 761, 766, 603 P.2d 857 (1979), *review denied,* 93 Wn.2d 1019, *cert. denied,* 449 U.S. 984 (1980) which stand for the proposition that an officer need only have probable cause to arrest without a warrant and is not required to have knowledge of evidence sufficient to establish guilt beyond a reasonable doubt. We agree that a police officer is not required to be absolutely certain that a person is committing a crime prior to that person's arrest. However, the officer's degree of certainty, *i.e.,* probable cause, is not at issue here. The question is whether the officer had probable cause to believe that a crime was being committed *in his presence.* Discovery of alcohol on a minor's breath may provide an officer with probable cause to believe that a crime has been committed, but not that it is presently being committed. Evidence of present possession, not past

possession, is needed to satisfy the "in the presence of" requirement. The argument that it is unnecessary to establish guilt beyond a reasonable doubt before finding that probable cause of arrest exists is not relevant.

■ Even if we were to find the term "possession" to be ambiguous and the State's argument a plausible interpretation of the term, among others, fundamental fairness requires that a penal statute be literally and strictly construed in favor of the accused although a possible but strained interpretation in favor of the State might be found. *State v. Bell,* 83 Wn.2d 383, 388, 518 P.2d 696 (1974). The term "possession" of liquor should not be construed to include liquor which has been assimilated by the body.

A finding that the alcohol was not in the "possession" of the defendant does not end the inquiry. The State argues in the alternative that consumption is an ongoing process and therefore, as long as alcohol remained in the defendant's bloodstream, it was in the process of being consumed. Again we disagree.

■ The parties cite no prior decisions interpreting the definition of "consume" as used in RCW 66.44.270, nor do we find any. "Consume" is defined in RCW 66.04.010 as follows:

> (6) "Consume" includes the putting of liquor to any use, whether by drinking or otherwise.

This definition suggests that neither the form nor the use of liquor determines its legality. Thus, when a minor uses liquor for cooking or drinks alcohol for medicinal purposes, the minor is in fact consuming liquor. This definition, however, is not helpful in resolving the present query; that is, whether consuming liquor includes the assimilation of alcohol which occurs after the liquor has been swallowed. We turn to the common definition of the word to interpret its meaning.

"Consume" is present tense and is defined as follows:

> To destroy or to bring to utter ruin; to destroy the substance of, especially by fire; to destroy by eating, devour-

ing and annihilating the form of a substance; to destroy, to use up, to expend; to waste or burn away; to perish; to spend wastefully, or to use up, expend, waste, devour, or exhaust.

The word "consume" is also defined to mean . . . to eat or drink up (food); devour. . . .

"Consume" may be employed as the equivalent of, or synonymous with, "absorb," "destroy," "engulf," "exhaust," "lavish," "swallow up," and "waste;" also "dissipate," "spend," and "squander;" and also "expend" and "use."

(Footnotes omitted.) 16D C.J.S. *Consume* 711–12 (1985).

"Consumed" is past tense and is construed to mean "used." 16D C.J.S. *Consume* 712 (1985).

The logical implication of the above definitions is that these two words mean something slightly different. To "consume" liquor is to drink liquor; in contrast, "consumed" implies that the liquor has already been drunk. In the present case, the officer did not see the defendant drinking anything. Therefore, the officer did not observe the defendant "consume" liquor. *Cf. State v. Johnson,* 71 Wn.2d 239, 243, 427 P.2d 705 (1967).

The basis for applying the stricter interpretation to the term "consume" is evident when one considers the "cannabis" exception to the general rule governing warrantless arrests for misdemeanors. RCW 10.31.100(1) provides that an officer having probable cause to believe that a person *has committed or is committing* a misdemeanor or gross misdemeanor involving the *use* or *possession* of cannabis shall have authority to arrest the person. This exception to the general rule would be unnecessary and meaningless if the terms "use or possession" were interpreted to include the state in which a person has already smoked or otherwise used cannabis yet still remains under the influence of the drug.

When we apply this reasoning to the terms "consume" and "possession" found in RCW 66.44.270, we are persuaded that these terms do not include the stage at which the liquor has already been swallowed but is still being

assimilated by the body. RCW 66.44.270 and RCW 10.31-.100 should be read together and both given effect. *Cf. Tommy P. v. Board of Cy. Comm'rs,* 97 Wn.2d 385, 392, 645 P.2d 697 (1982). The strict interpretation of "possession" and "consume" does accommodate a meaning for both words by which the statutes complement each other.

Finally, practical considerations as well as rules of statutory construction persuade us that the State's interpretation of "consume" as an "ongoing process" is improper. Consider the situation where a 20–year–old minor journeys into Idaho or British Columbia where the legal drinking age is 19 and there imbibes intoxicating liquor. Under the statutory interpretation urged by the State, probable cause to arrest the same 20–year–old for violation of RCW 66.44.270 exists if he returns to the state of Washington with any trace of liquor still present in his body. Thus, although he did not drink any intoxicating liquor within this state, he might still be subject to arrest for "consuming" liquor in the presence of a police officer who happened to notice his condition or who smelled alcohol on his breath. The minor who has legally consumed liquor with the consent of parents, for legal religious purposes, or legally just across the state line has not committed a crime and does not commit one by coming near a police officer before the alcohol in his blood has been dispelled. The Legislature could not have intended such a result in those instances.

In the present case, the officer did not observe the defendant acquire liquor. Nor did the officer observe any liquor in the defendant's possession. Finally, the officer did not observe the defendant consume any liquor. Defendant therefore was not guilty of violating RCW 66.44.270.

This upholds the recognized distinction between felonies and misdemeanors referred to in *Draper v. United States,* 358 U.S. 307, 315–16, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959) (Douglas, J., dissenting).

The rule which permits arrest for felonies, as distinguished from misdemeanors, if there are reasonable grounds for believing a crime has been or is being com-

> mitted . . . grew out of the need to protect the public safety by making prompt arrests. . . . Yet, apart from those cases where the crime is committed in the presence of the officer, arrests without warrants, like searches without warrants, *are the exception,* not the rule in our society.

(Italics ours.)

The assumption that it is desirable to arrest with a warrant whenever possible rests upon the belief that a greater degree of protection against unwarranted police interference is afforded if arrest is delayed until an impartial evaluation of the evidence can be made. *See generally* W. LaFave, *Arrest: The Decision to Take a Suspect into Custody* 15 (1965). The right to protect against unwarranted police interference is more pronounced in the case of misdemeanors because such crimes generally pose less threat to society than do felonies.

In holding that the crime did not occur "in the presence" of the officer, we recognize the need to protect minors against their immaturity and lack of experience as well as the need to protect those persons who may be harmed by minors under the influence of alcohol. It is, however, for the Legislature to extend the authority of law enforcement officers to arrest for misdemeanors not committed in their presence by extending the list of exceptions contained in RCW 10.31.100 to include RCW 66.44.270, thereby eliminating the requirement that the consumption or possession of alcohol occur "in the presence" of the officer. This is a legislative, not a judicial, prerogative.

The second issue is whether the court erred in finding the defendant guilty of resisting arrest when the arrest was unlawful.

The defendant contends that since his arrest was "unlawful" he cannot be guilty of resisting arrest because that crime requires that the arrest itself be "lawful". While we do not agree that a criminal can never be convicted of a crime when he has used force to resist arrest when the arrest is unlawful, *i.e.,* without a required warrant, we find

that, under the record before us, this defendant is not guilty of resisting arrest.

RCW 9A.76.040 provides:

(1) A person is guilty of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from lawfully arresting him.

(2) Resisting arrest is a misdemeanor.

■ An assault occurs when there is an illegal arrest. *Guffey v. State,* 103 Wn.2d 144, 149, 690 P.2d 1163 (1984). A person illegally arrested by an officer may resist the arrest; the means used to resist an unlawful arrest must be reasonable and proportioned to the injury attempted upon the party sought to be arrested. *State v. Rousseau,* 40 Wn.2d 92, 95, 241 P.2d 447 (1952); *State v. Humphries,* 21 Wn. App. 405, 407–08, 586 P.2d 130 (1978). "The use of force to prevent even an unlawful arrest which threatens only a loss of freedom is not reasonable." *State v. Goree,* 36 Wn. App. 205, 209, 673 P.2d 194 (1983), *review denied,* 101 Wn.2d 1003 (1984).

In the present case, the stipulated facts state only that the defendant resisted arrest and had to be forcibly placed in the back of the police car. Counsel commented in the verbatim report of proceedings that the defendant swung his elbow at the officer, but there is no testimony in the record supporting this assertion. Thus, there is no evidence before us that the defendant used force to resist, but only that he was recalcitrant. The evidence is therefore insufficient to establish that the defendant acted unreasonably in resisting arrest. The defendant's conviction for resisting arrest is reversed.

DOLLIVER, C.J., and UTTER, DORE, PEARSON, GOODLOE, and DURHAM, JJ., concur.

BRACHTENBACH, J. (dissenting)—Here are the unchallenged findings of fact:

1. Defendant appeared to be intoxicated;

2. Strong odor of intoxicants came from defendant;

3. Defendant was a minor.

Here is the challenged conclusion of law:

Defendant violated RCW 66.44.270, minor in possession of liquor.

The District Court held there was a violation and, therefore, the arrest was valid. So did the Superior Court, and so did a majority of the Court of Appeals. No one challenges the *fact* that the defendant was intoxicated. Yet, a majority of this court holds that everyone else was wrong because the intoxicated defendant was not in "possession" of intoxicants.

Oh, I concede the accuracy of the majority's citations. What I do not concede, however, is the absence of logic and rational analysis. Common sense is not a bad precedent. To hold that an admittedly intoxicated person is not in possession of intoxicants is an exercise in sophistry beyond my comprehension unless we, like spiders, are content to spin fine but temporary webs.

Francis Bacon, in "Of Judicature," *Essays* (1625) said: "Judges must beware of hard constructions and strained inferences, for there is no worse torture than the torture of laws." Tripp, *International Thesaurus of Quotations* 330 (1970).

The majority tortures the law; I am reminded of a phrase well known to appellate judges: "I dissent for the reasons stated by the majority."

I would affirm.

ANDERSEN, J., concurs with BRACHTENBACH, J.